**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 12-cv-03268-CMA-CBS

GARY A. WRIGHT,

    Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., and
TRANS UNION LLC,

    Defendants.

---

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**

---

Defendants Experian and Trans Union, both credit reporting agencies (CRAs), published reports that attributed a federal tax lien to Plaintiff Garry A. Wright. Plaintiff disputes that he is responsible for the lien and argues Defendants violated various laws regulating CRAs by inaccurately reporting otherwise. Because it is reasonable to interpret the federal lien as applying to Plaintiff, Defendants violated no law by including it on Plaintiff's credit report. This Court therefore grants Defendants' motions for summary judgment.

## I. BACKGROUND

### A. IRS ISSUES NOTICE OF FEDERAL TAX LIEN

This dispute revolves around the parties' competing interpretations of a notice of federal tax lien (NFTL) issued by the IRS on May 15, 2009. The Court reproduces in relevant part of the NFTL on the following page:

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #6  Lien Unit Phone: (800) 829-3903 | Serial Number  549008209 | For Optional Use by Recording Office |
|---|---|---|

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer ATTORNEYS TITLE INSURANCE AGENCY OF WRIGHT GARY A MEMBER

Residence     715 W MAIN ST STE 305
              ASPEN, CO 81611-1659

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 941 | 03/31/2004 | 20-0132022 | 04/09/2007 | 05/09/2017 | 726.83 |

(Doc. # 85-8 at 15.)

For present purposes, two items in the above reproduction merit further discussion because they go to the heart of the agreements and disagreements between the parties in this case.

First, the parties dispute the import of the part of the above section of the NFTL for "Name of Taxpayer," where it states "Attorneys Title Insurance Agency of Wright Gary A Member." On the one hand, the parties **agree** that the NFTL can be interpreted to apply against Attorneys Title Insurance Agency of Aspen, LLC (ATA).[1] On the other hand, the parties **disagree** about whether, given the way the NFTL is worded, it **also** can be interpreted to apply against Plaintiff.

---

[1] To be sure, whether or not this document can be **interpreted** to apply to ATA is a matter separate and apart from whether, as Plaintiff alleges, the IRS **erroneously issued** the NFTL in the first place.

2

Second, the "Kind of Tax" category in the reproduction indicates that this lien is for "[Form] 941" employment taxes. If the IRS believes a business is liable for 941 employment taxes, the IRS can pursue theories of tax liability designed to hold a responsible member of a company personally liable for failure to pay 941 employment taxes. *See, e.g.*, *Med. Practice Solutions, LLC v. Comm'r*, 98 T.C.M. (CCH) 242 (2009), *supplemented*, 99 T.C.M. (CCH) 1392 (2010). There is no dispute that, as a general matter, the IRS has relied on such a theory of 941 tax liability in the past. At the same time, the parties **disagree** about whether the IRS had the intention and ability to pursue such a theory of tax liability against Plaintiff.[2]

Regardless of how one reads the NFTL, its issuance caused the Pitkin County Clerk to record the following information about Plaintiff, which the Court reproduces in relevant part:

| Full Name | Cross Party Name | Record Date | Doc Type | Reception |
|---|---|---|---|---|
| Wright Gary A | Internal Revenue Service | 5/27/2009 | FED TAX LIEN | 559399 |

(Doc. # 85-1 at 7.)

The parties provide no further evidence on why the Pitkin County Clerk decided to present the information in the table as it did above. For example, neither party provides testimony about how Pitkin County interprets NFTLs, nor do the parties address whether there are any procedures when liens are asserted against multiple parties or pursuant to NFTLs related to 941 tax liability.

---

[2] The parties also debate the import of prior IRS correspondence related to ATA, which the IRS addressed to both Plaintiff and ATA and which might have been sent or received at addresses affiliated with Plaintiff personally. For present purposes, this correspondence seems of limited value as Defendants did not have knowledge of it in the course of their investigations and reinvestigations of how to apply the NFTL.

3

The same information contained in the Pitkin County Clerk's record appears in substantially the same form in a record created by LexisNexis, a data collection company. *See, e.g.*, (Doc. # 86-7 at 2.) Both Defendants relied on the LexisNexis report—rather than the underlying NFTL—in determining that the NFTL applied to Plaintiff. Further, at all times relevant here, both Defendants reported the NFTL on the credit reports they compiled about Plaintiff. *See, e.g.*, (Doc. ## 85 at ¶ 10; 87 at ¶¶ 25-26).[3]

### B. PLAINTIFF DISPUTES THE NFTL WITH THE IRS

On September 10, 2009, Plaintiff first disputed the validity of the NFTL in a letter sent to the IRS. In the letter, Plaintiff provided copies of a check sent to and then cashed by the IRS before May 12, 2009. Plaintiff alleged that this check covered the full amount of the lien. Plaintiff argued that the evidence of the check established the NFTL was prematurely and therefore erroneously filed. Plaintiff asked that the IRS withdraw the NFTL. (Doc. # 86-4 at 4.)

On December 15, 2010, the IRS filed a Certificate of Release of Federal Tax Lien related to Plaintiff's case. In language and formatting that is identical to what appears in the NFTL, the release identifies the "Name of the Taxpayer" associated with the release as "Attorneys Title Insurance Agency of Wright Gary A Member." The release states

---

[3] Both Defendants have since removed reference to the NFTL on these same reports. *See* (Doc. ## 85 at ¶ 32; 97 at ¶ 4). Plaintiff cites this decision as evidence that Defendants' prior reporting of the NFTL was inaccurate. This conclusion does not necessarily follow from this fact: Defendants have discretion not to report released NFTLs on credit reports—and perhaps the more frequent exercise of this discretion could yield more salutary public policy outcomes. *See* Danshera Cords, *Lien on Me: Virtual Debtors Prisons, the Practical Effects of Tax Liens, and Proposals for Reform*, 49 U. Louisville L. Rev. 341 (2011) (advocating, among other things, that CRAs exercise this type discretion).

that this taxpayer "has satisfied the taxes" subject to the NFTL, that the "lien . . . for these taxes . . . has been released," and that the "proper officer in the office where the notice of Internal revenue tax lien was filed . . . , is authorized to note . . . the release of this lien."  (Doc. # 86-4 at 7.)

The Court notes two additional facts about the May 2009 and December 2010 communications between Plaintiff and the IRS.

First, the argument Plaintiff raised in the September 2009 letter is different from the principal one he raises in this case.  In the September 2009 letter, Plaintiff argued only that the NFTL as a whole was invalid: he never raised the separate argument that regardless of the NFTL's validity, it could apply only to ATA.

Plaintiff's decision not to raise a dispute about the NFTL's scope is all the more curious because, in his letter to the IRS, he seemed to recognize that the NFTL affected him personally.  Although Plaintiff indicates that the "[t]axpayer entity [i.e., ATA]" filed the check to satisfy payment of the lien amount, he urged the IRS to provide him "prompt attention" because "the undersigned **individual** taxpayer is in the process of attempting to refinance his primary residence."  (Doc. # 86-4 at 4 (emphasis added.)  In the same letter, Plaintiff provided a list of CRAs and banks for the IRS to contact after the lien had been withdrawn.  This list included Timberline Bank of Aspen, Plaintiff's local bank, where he would later seek financing on a home loan.  (*Id.*); *see also* (Doc. # 97 at 2).

Second, there is an important distinction between the relief Plaintiff sought in May 2009 and the relief the IRS granted in December 2010.  Plaintiff asked for a **withdrawal** of the NFTL in his letter to the IRS.  If a taxpayer obtains a withdrawal, the

IRS is required by statute to erase the NFTL as if it "had not been filed," 26 U.S.C. § 6323(j), and to notify CRAs of the erasure, *id.* § 6323(j)(2).  In this case, however, the IRS did not withdraw the NFTL; rather, it granted Plaintiff only a **release**.  Although a **release** removes the NFTL as an encumbrance on Plaintiff's property, it does not trigger either the erasure or notification requirements obtained through a withdrawal.  *See* 15 U.S.C. § 1681c(a)(3); *see also* Danshera Cords, *Lien on Me: Virtual Debtors Prisons, the Practical Effects of Tax Liens, and Proposals for Reform*, 49 U. Louisville L. Rev. 341 (2011) (discussing the effects on a credit report of obtaining a release instead of a withdrawal of an NFTL).

At his deposition, Plaintiff admitted that he did not understand the difference between a withdrawal and a release.  Further, the IRS sends what it calls a Form 10916C if it grants a request for a withdrawal of an NFTL, but Plaintiff conceded at his deposition that he could not remember ever receiving such a form.  (Doc. # 85-2 at 19-20.)

Plaintiff has never appealed what was ultimately an adverse ruling from the IRS on his request for a withdrawal, and the IRS has never withdrawn the lien.  Plaintiff has also never sought clarification from the IRS that the NFTL issued here applied only against ATA, notwithstanding the contrary interpretations of the NFTL proffered by Defendants.  *See, e.g.*, (Doc. ## 85 at ¶ 31; 89 at ¶ 15; 85-2 at 19-20.)

### C. PLAINTIFF DISPUTES THE NFTL WITH DEFENDANTS

After Plaintiff obtained the release from the IRS, he lodged a dispute about the validity of the NFTL with Defendants.  In particular, Plaintiff sent a first round of nearly identical letters to Defendants in July 2012, in which he advanced two arguments.  First,

Plaintiff reiterated the argument he made to the IRS that the NFTL was invalidly issued in the first instance. As support for this argument, he provided much of the prior correspondence to the IRS, along with the IRS release. Second, he argued that the NFTL could not apply to him personally—it could apply only to ATA. Plaintiff asked that the NFTL be removed from his credit report. (Doc. ## 85-7 at 12-28; 86-5.)

In response, Defendants updated their records on Plaintiff to establish that the NFTL had been released, but they did not erase the NFTL from the report. In making this determination, Defendants solely relied on investigations performed by LexisNexis on the validity of Plaintiff's claims. (Doc. ## 85-7, 86-6.)

Finding Defendants' actions insufficient, Plaintiff sent them a second round of nearly identical letters in September 2012. Defendants again consulted with LexisNexis. For a second time, LexisNexis verified that the report relied upon by Defendants was accurate based on the records in Pitkin County. In turn, Defendants relied on this verification by LexisNexis. (Doc. ## 85-7, 86-9.)[4]

Dissatisfied with Defendants' response, Plaintiff brought suit, advancing claims under the Fair Credit Reporting Act (FCRA) and its Colorado equivalent. (Doc. #1.) Those claims are the subject of the instant motions for summary judgment.

---

[4] With respect to both reinvestigations, whether LexisNexis (or a contractor) reviewed the actual NFTL itself or just the Pitkin County records appears to be in dispute. For the reasons explained below, this dispute is not material for present purposes.

## II. STANDARD

Summary judgment is appropriate if the moving party demonstrates there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998).

## III. ANALYSIS

Plaintiff's first two claims are based on 15 U.S.C. § 1681e(b) of FRCA and the analogous Colorado state provision, Colo. Rev. Stat. § 12-14.3-103.5. Plaintiff alleges that Defendants' initial reporting of the NFTL—before Plaintiff lodged his dispute with either Defendant—constituted a violation of these laws.

To prevail on these claims, Plaintiff must establish: "(1) [Defendants] failed to follow reasonable procedures to assure the accuracy of [their] reports; (2) the report in question was, in fact, inaccurate; (3) [Plaintiff] suffered injury; and (4) [Defendants'] failure caused his injury." *Eller v. Trans Union, LLC*, 739 F.3d 467, 473 (10th Cir. 2013).

Plaintiff also alleges that Defendants violated 15 U.S.C. § 1681i by performing an inadequate **re**investigation of Plaintiff's credit report after he informed Defendants about what he perceived to be inaccuracies in the NFTLs. Prevailing on a § 1681i claim requires establishing essentially the same four elements relevant for an investigation claim, along with establishing a fifth element not in dispute here—namely, that Plaintiff notified Defendants about the alleged inaccuracy. *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010).

All claims in this case can be resolved on the reasonableness of the procedures employed by Defendants in their investigation and reinvestigation of Plaintiff's claims—the first element listed above.[5]

**A. STANDARD**

As an initial matter, there is a split of authority on how to assess the reasonableness of a procedure employed by a CRA under the facts relevant here: namely, when a CRA does not analyze the underlying document that triggers the reported debt but rather relies on interpretations of the same provided by third parties.

Citing one side of this split, Defendants unsurprisingly invoke the CRAs' favorite line of cases, starting with *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994), which concerned an agency that had reported an unpaid judgment entered in a court docket sheet that indisputably could not be attributed to the alleged debtor. Notwithstanding the CRA's reporting of this inaccuracy, the Seventh Circuit laid out a seemingly broad rule that "as a matter of law, a credit reporting agency is not liable under the FCRA for reporting inaccurate information obtained from a court's Judgment Docket, absent prior notice from the consumer that the information may be inaccurate." *Id.* at 285; *see also Zahran v. Transunion Corp.*, CIV. 01C1700, 2003 WL 1733561, at *5 (N.D. Ill. Mar. 31, 2003) (applying a similar standard).

Defendants' interpretation of *Henson* and its progeny is that, even assuming the NFTL was inaccurate, they should be absolved of responsibility merely because they

---

[5] It does not appear that Plaintiff raises a parallel state-law claim regarding Defendants' reinvestigation, but such a claim would fail for the same reasons that the FCRA reinvestigation claim fails. Further, because this Court concludes that Defendants' employed reasonable procedures, it follows that Defendants committed no willful violation of FCRA or its Colorado equivalent and these claims by Plaintiff accordingly fail.

relied on the report provided by LexisNexis and had no prior knowledge of an inaccuracy.  In a similar vein, Defendants seem to suggest that, as long as they relied on information from LexisNexis in the reinvestigations triggered by Plaintiff's disputes, they are insulated from FCRA liability regardless of whether the underlying reinvestigation failed to uncover an inaccuracy.

This interpretation of the Seventh Circuit's position in *Henson*, however, has been criticized by other courts not as willing to absolve CRAs from FCRA liability merely because they rely on reputable third parties' inaccurate reporting.  These courts have suggested that "if there is an easily available procedure that would greatly improve accuracy at a minimal cost," then summary judgment may not be appropriate regardless of whether or not the CRA relied on the report of a third party.  *O'Brien v. Equifax Info. Servs., LLC*, 382 F. Supp. 2d 733, 739 (E.D. Pa. 2005).[6]

The Ninth Circuit's decision in *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008), provides a good example of how this more searching standard applies under facts similar to this case.  In *Dennis*, a tenant in Los Angeles was sued by his landlord for unpaid rent but reached a settlement with the landlord in which both parties agreed that no judgment would be entered against the tenant.  Notwithstanding this agreement, the court docket entry describing the agreement inaccurately reported that a "[j]udgment

---

[6] To be sure, *O'Brien* concerned the **denial** of a motion for summary judgment, but this Court sees no reason why the principles articulated by the *O'Brien* court cannot apply with equal force here.  *See also Cortez v. Trans Union, LLC*, 617 F.3d 688, 710 (3d Cir. 2010) (rejecting a CRA's interpretation of the Seventh Circuit's position and reasoning that "Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party.").

[e]ntered" against the tenant. A subsequent docket entry correctly reflected that the case was dismissed without prejudice, which meant that under the relevant state law, no judgment had entered against Plaintiff. *Id.* at 1068.

Experian reported the case as if judgment had been entered against the tenant, and when the tenant protested, Experian hired a third-party to investigate the disputed information. The third party misread the underlying court documents as reflecting that judgment had entered against the tenant, when in fact these same documents confirmed the opposite was true. The district court granted summary judgment to Experian on the tenant's reasonable investigation and reinvestigation claims under FCRA. *Id.* at 1068-69.

The Ninth Circuit reversed on both claims. As to the reasonable investigation claim, the Ninth Circuit held that "Experian remains free to argue (based, perhaps, on the inaccurate [docket entry]) that it should be exonerated"; however, such an issue could not be resolved as a matter of law. In other words, the Ninth Circuit decided that Experian could argue to a jury that its initial reporting was reasonable because of the contradictory filings that appeared on the court docket sheet.

As to the reinvestigation claim, the Ninth Circuit reversed and entered summary judgment in favor of the tenant, reasoning that "Experian could have caught [the third party's] error if it had consulted the Civil Register in [the tenant's] case, which can be viewed free of charge" online. In other words, because the Los Angeles court file "contained exactly what [the tenant] and the court Register said that it contained," no reliance on the third party investigation could absolve Experian from liability based on its

11

failure to appreciate what was plain as day to anyone who took the time to review the relevant documentation. *Id.* at 1070.

This Court endorses the version of the rule articulated in cases such as *Dennis* and *O'Brien*.[7] Thus, the principal question to be resolved in this case is whether there is an easily available a procedure that would greatly improve accuracy of Defendants' reporting of NFTLs such as Plaintiff's and do so at minimal cost.

## B. APPLICATION

Plaintiff attempts to draw an analogy between his circumstances and the facts presented in cases like *Dennis*, in which: (1) an indisputably inaccurate report was reported to a CRA by a third party, (2) the CRA repeated information provided by the third party with damaging results to a FCRA plaintiff, and (3) such a result could have been avoided if the CRA had reviewed more closely the records relied upon by the third party. Plaintiff concludes, therefore, that this Court cannot determine reasonableness as a matter of law because the NFTL was inaccurate and Defendants never looked at the NFTL itself, either in their initial investigation or the reinvestigation.

This argument fails at the outset, however, because there is no irrefutable evidence that the NFTL applies only to ATA and not Plaintiff. For example, unlike in *Dennis*, where a subsequent docket entry corrected a prior entry that incorrectly applied

---

[7] Defendants interpret this Court's prior order in *Shepherd v. Liberty Acquisitions, LLC*, No. 11-CV-00718-CMA-HEH, 2012 WL 2673101 (D. Colo. July 5, 2012), as definitively endorsing their interpretation of the *Henson* rule. That reading of *Shepherd* overstates its holding. First, *Shepherd* is factually distinguishable in that the public record obtained by the CRA in *Shepherd* supported the CRA's interpretation of what it had found. *See Shepherd*, 2012 WL 2673101 at *5 (distinguishing *Dennis* on this basis). Further, in *Shepherd* this Court never definitively established whether reliance on third party reports would or would not be reasonable. *Id.* at *3 (noting that "[g]enerally" a CRA may rely on records created by third parties).

a judgment as entering against the plaintiff, there is no clarification from the IRS that, notwithstanding the mention of Plaintiff's name on the original NFTL, the record should be construed as applying only to ATA.

Plaintiff never asked the IRS for such clarification for the NFTL.  Instead, he uses experts and business partners to parse the language of the NFTL in an attempt to achieve the same result.  Somewhat tendentiously, these individuals suggest that even though the NFTL includes Plaintiff's name in the box provided for "Name of Taxpayer," this fact does not mean that Plaintiff is a named taxpayer for purposes of the NFTL. *See, e.g.*, (Doc. # 97-9, 97-14.)

Even if this Court accepts these experts' conclusions at face value and assumes there is a reasonable dispute about whether the NFTL applies against Plaintiff personally, Plaintiff still cannot prevail.  Rather, this Court finds that it was **reasonable** to interpret the NFTL as extending to Plaintiff and that no additional procedure implemented by Defendants would have allowed them to more accurately determine the scope of the NFTL's applicability.

In reaching this conclusion, this Court notes at the outset that a broad interpretation of the applicability of the NFTL was accepted by **Plaintiff** himself in his initial letter to the IRS.  As Plaintiff then stated, ATA as the "taxpayer entity" had paid the entirety of the amount referenced in the NFTL, but Plaintiff himself needed the NFTL removed because he, as "the undersigned **individual** taxpayer[, was] in the process of attempting to refinance his primary residence." (Doc. # 86-4 at 4 (emphasis added).)

Further, regardless of how one considers the language Plaintiff employed in his first letter to the IRS, it is undisputed that Plaintiff's name appears on the NFTL and that

NFTLs dealing with 941 tax liability **can** issue against both a business entity and its member. The first fact is apparent from the face of the NFTL; the second is a legal theory indisputably employed by the IRS but ignored by Plaintiff's experts. Given these two undisputed facts, it is reasonable to conclude that, according to prior practice, the IRS intended the NFTL to issue against both taxpayers listed on the document.[8]

Next, it is beyond dispute that Pitkin County interpreted the NFTL as giving notice of a lien against Plaintiff personally and that it was reasonable for LexisNexis to rely on this interpretation.[9] As an initial matter, Pitkin County's interpretation of the NFTL was reasonable in the first instance, for the reasons explained above. Moreover, Plaintiff provides no credible evidence of irregularities in the way that Pitkin County reported

---

[8] Note that the result here might be different if aspects of the underlying NFTL **not** referenced in the Pitkin County record could have alerted Defendants that it would be a mistake to apply the lien against Plaintiff personally. For example, if 941 employment taxes **could not** be applied against Plaintiff personally, then it might have been unreasonable for Defendants to rely on the Pitkin County record, as it does not reference the type of tax at issue here and it might be necessary to implement a procedure to correct for Pitkin County's misleading reporting. Further, if an NFTL that can apply against someone personally only if it references that person's social security number, then again it might be unreasonable for Defendants not to review the underlying NFTL as the information is not contained in the Pitkin county record. But neither of these scenarios are implicated here, notwithstanding Plaintiff's suggestion to the contrary. Rather, Defendants ably demonstrate in their briefing that a member of a business **can** incur personal liability for a 941 tax and an NFTL is still valid if it fails to reference this member's social security number.

[9] Plaintiff disputes whether the Pitkin County record establishes that Pitkin County has interpreted the NFTL as being issued against him personally. In Plaintiff's mind, Pitkin County merely accepts liens for filing without analyzing them and then "puts the basic information into its index system which can be accessed through a website." This Court rejects this exercise in lawyerly semantics out of hand: when a table provides for someone's name in the same row as the words "fed. tax lien," the creator of that table thinks an NFTL applies against you. Further, Plaintiff's position here is also undermined by record evidence supplied by Defendants, which directly links the NFTL at issue here to the "taxpayer" identified as both ATA and Plaintiff by Pitkin County. *See* (Doc. # 87 at 15).

NFTLs or any other record, such that it would have been prudent or necessary to view records issued by that office with a gimlet eye.[10]

Finally, it was reasonable for Defendants to rely on LexisNexis's repetition of this information because the document itself can reasonably be interpreted to apply against Plaintiff. Although a more thorough investigation of the lien would have included a review of the NFTL itself, it would have been reasonable for Defendants to have interpreted the NFTL in exactly the same way that Pitkin County did, i.e., that the NFTL issued against Plaintiff personally. Thus, Defendants are entitled to summary judgment on Plaintiff's reasonable investigation claims.

The above analysis also undermines Plaintiff's **re**investigation claims. As to this question, it seems to be a disputed fact question as to whether any reinvestigation included a review of the NFTL itself or again a review of only the Pitkin County records.

This dispute is immaterial. Again, the only reasonable additional step[11] that Defendants may not have taken in reinvestigating Plaintiff's dispute was a review the NFTL itself. Yet for the reasons discussed above, in reviewing this document in its

---

[10] One of Plaintiff's experts suggests that Pitkin County's record keeping may be untrustworthy because in the early 1990s record clerks in the Northeastern United States misinterpreted a number of tax liens and caused CRAs to inaccurately report these liens against a number of people who had no credit problems. (Doc. # 98-7 at 5-6.) This evidence is clearly insufficient to cast doubt on procedures used by a county clerk far removed by geography and time from this incident. Plaintiff's expert also references two cases from the 2000s in which CRAs incorrectly applied tax liens against individuals despite clear evidence that they did not apply. (*Id.*) These examples are obviously distinguishable from this case, in light of the disputed nature of the scope of the NFTL.

[11] Throughout his briefing, Plaintiff takes issue with the fact that in investigating the validity of the NFTL, Defendants relied on computer automation and services provided by investigators and companies based in other countries. To be sure, reliance on automatized processes or persons who are less expert in American law might be unreasonable if the process failed to catch an indisputable inaccuracy. But this is not a concern here: Americans, Chileans, Indians, and robots alike could reasonably interpret the NFTL itself as applying to Plaintiff.

original form, Defendants could still reach the reasonable conclusion that the NFTL applied to Plaintiff personally.

## IV. **CONCLUSION**

Accordingly, it is hereby ORDERED that Defendants' Motions for Summary Judgment (Doc. ## 85, 87) are GRANTED and this case is dismissed WITH PREJUDICE. It is

FURTHER ORDERED that all other pending motions (Doc. ## 83, 127, 131, 132, 133) are DENIED AS MOOT.

DATED: August 14, 2014

BY THE COURT:

*[signature: Christine M Arguello]*

_____
CHRISTINE M. ARGUELLO
United States District Judge